IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SANDRA W. JAMES,                    §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §   Civil Action No. H-12-2095
                                    §
LIFE INSURANCE COMPANY OF           §
NORTH AMERICA & GEICO               §
CORPORATION VOLUNTARY GROUP         §
ACCIDENT INSURANCE PLAN,            §
                                    §
        Defendants.                 §

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court are Plaintiff's Motion to Determine the Standard of Review (Doc. 61) and Motion for Partial Summary Judgment (Doc. 86) and Defendants' Motion for Summary Judgment (Doc. 72), Amended Motion to Strike Plaintiff's Designated Experts (Doc. 58), and Motion to Strike Plaintiff's Motion for Partial Summary Judgment and Summary Judgment Exhibits (Doc. 86).  The court has considered the motions, the responses, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Plaintiff's Motion to Determine the Standard of Review to the extent that it determines the standard of review in resolving Defendants' Motion for Summary Judgment, **GRANTS IN PART, DENIES IN PART** Defendants' Motion to Strike Plaintiff's Designated Experts, and **GRANTS IN PART, DENIES IN PART** Defendants' Motion to Strike Plaintiff's Motion for Partial Summary Judgment and Summary Judgment Exhibits.  The court further **RECOMMENDS** that Defendants'

Motion for Summary Judgment be **GRANTED IN PART, DENIED IN PART**.

## I.  Case Background

Plaintiff Sandra W. James ("James") filed this suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., seeking Accidental Death and Dismemberment ("AD&D") benefits allegedly owed to her under Defendant GEICO Consolidated Welfare Benefit Plan (the "Plan").[1]  The AD&D benefits were insured under Group Accident Policy OK 826414 (the "Policy") provided by Defendant Life Insurance Company of North America ("LINA").[2]  GEICO Corporation ("GEICO") appointed LINA as the Claims Administrator and Fiduciary for the Plan; the Benefits Administrative Committee of GEICO was the Plan Administrator.[3]

The Policy provided AD&D benefits when "the Covered Person suffer[ed] a Covered Loss resulting directly and independently of all other causes from a Covered Accident."[4]  A "Covered Accident" was defined, in relevant part, as a "sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or a Covered Loss" that is "not

---

[1]     See Doc. 1, Pl.'s Orig. Compl. p. 3. James was a GEICO employee. Id. Defendant the Plan noted an error in its name in Plaintiff's pleading.  Doc. 5, Defs.' Orig. Ans.

[2]     See Doc. 72-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of Michael James ("M. James") ¶ 3.

[3]     See Doc. 1, Pl.'s Orig. Compl. pp. 3, 5; Doc. 72-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of M. James pp. 103, 106; Doc. 96, Pl.'s Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J.  p. 33.

[4]     Doc. 72-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of M. James p. 97.

contributed to by disease, Sickness [sic], or mental illness," and "is not otherwise excluded" by the Policy.[5]

Plaintiff's husband, Robert L. James ("Robert"), died in a single vehicle accident in Caroline County, Virginia, on May 21, 2010.[6]  The police report stated that Robert ran off the road, over-corrected, and collided with a tree.[7]  Following the crash, a fire erupted, resulting in Robert's death.[8]  The medical examiner determined that the cause of death was "inhalation of combustion products and thermal injury."[9]  The toxicology report revealed that Robert had a blood alcohol level of 0.19 percent at the time of his death.[10]

Thereafter, Plaintiff filed a claim with LINA, seeking the Policy's accidental death benefit based on Robert's death.[11]  On August 4, 2010, LINA denied Plaintiff's claim.[12]  LINA determined that the crash was caused by Robert's driving under the influence

---

[5]    Id. p. 85.

[6]    See id. p. 62; Doc. 1, Pl.'s Orig. Compl. p. 2

[7]    See Doc. 72-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of M. James p. 62; Doc. 1, Pl.'s Orig. Compl. p. 2

[8]    See Doc. 72-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of M. James p. 58; Doc. 1, Pl.'s Orig. Compl. p. 2

[9]    See Doc. 72-1, Ex. A to Defs.' Mot for Summ. J., Aff. of M. James p. 58.

[10]   See id. p. 40.

[11]   See id. pp. 55-56.

[12]   See id. pp. 25-29.

of alcohol and that such a crash was not "unforeseen," as required by the Policy.[13]   LINA reasoned that because drunk driving has been criminalized and the consequences of drunk driving are well-known, it could not "be claimed that a reasonable person would be unaware of the danger of driving under the influence."[14]   LINA further concluded that because an individual with a blood alcohol level between 0.11 and 0.20 percent suffers physical impairments such as staggering and slowed reaction time, "serious injury or death would be highly likely to occur while operating a vehicle with a [blood alcohol level] of .19%."[15]

Plaintiff appealed LINA's decision by letter on August 27, 2010.   LINA denied Plaintiff's appeal, reiterating the reasons cited in its original denial.[16]   Plaintiff filed this suit on July 12, 2012, alleging that LINA's denial of the claim was based on an incorrect factual determination and an incorrect interpretation of the Policy and seeking a de novo review of these determinations.[17] Plaintiff also sought statutory penalties of up to 100 dollars per day for LINA's alleged failure to supply her with a complete copy of her claim file pursuant to 29 U.S.C. § ("Section") 1132(c),

---

[13]   See id. p. 26.

[14]   Id.

[15]   Id.

[16]   Id. pp. 16-24.

[17]   See Doc. 1. Pl.'s Orig. Compl. p. 7.

"surcharge" damages for LINA's alleged breach of fiduciary duty, attorneys' fees, and costs.[18]

On October 7, 2013, the undersigned issued a memorandum and recommendation granting Defendants' motion for judgment on the pleadings as to Plaintiff's claim for breach of fiduciary duty.[19] The memorandum and recommendation was adopted on November 1, 2013.[20]

On August 22, 2013, Defendants filed a motion to strike Plaintiff's designated experts.[21] Plaintiff responded on September 24, 2013, and Defendants replied on September 30, 2013.[22] Plaintiff filed a motion to determine the standard of review on September 20, 2013, to which Defendants responded on October 11, 2013.[23] On the same day, Defendants filed a motion for summary judgment.[24] Plaintiff filed a response and motion for partial summary judgment on November 1, 2013.[25] On November 8, 2013, Defendants filed a reply and a motion to strike Plaintiff's motion for partial summary

---

[18]   See id. pp. 12-13.

[19]   See Doc. 69, Mem. & Recommendation Dated Oct. 7, 2013.

[20]   See Doc. 77, Order Dated Nov. 1, 2013.

[21]   See Doc. 48, Defs.' Mot. to Strike Pl.'s Designated Experts.

[22]   See Doc. 63, Pl.'s Resp. to Defs.' Mot. to Strike Pl.'s Designated Experts; Doc. 64, Defs.' Reply in Supp. of Mot. to Strike Pl.'s Designated Experts.

[23]   See Doc. 61, Pl.'s Mot. to Determine Standard of Review; Doc. 71, Defs.' Resp. to Pl.'s Mot. to Determine Standard of Review.

[24]   See Doc. 72, Defs.' Mot. for Summ. J.

[25]   See Doc. 78, Pl.'s Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J.

judgment and summary judgment exhibits, to which Plaintiff did not
respond.[26]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.
2003).  A material fact is a fact that is identified by applicable
substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could
resolve the issue in favor of either party.  Anderson, 477 U.S. at
250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th
Cir. 2002).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992).  If the moving party can show an absence of record

---

[26]    See Doc. 87, Defs' Reply. in Supp. of Mot. for Summ. J; Doc. 86,
Defs.' Mot. to Strike Pl.'s Mot. for Partial Summ. J. and Summ. J. Exs.

evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant

fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Plaintiff's Motion for Partial Summary Judgment

Defendant moves to strike Plaintiff's motion for partial summary judgment on the basis that it was untimely filed. A Scheduling Order dated May 13, 2013, set the deadline to file dispositive motions and all other pretrial motions as October 4, 2013.[27] On October 3, 2013, the parties filed a joint motion to extend this deadline to October 11, 2013.[28] Plaintiff neither requested any further extensions before filing her motion for partial summary judgment on November 1, 2013, nor gave good cause for the untimely filing.[29] Therefore, the court orders that Plaintiff's Motion for Partial Summary Judgment be stricken from the record.

### IV. Defendants' Motion for Summary Judgment

Defendants move for summary judgment that LINA's decision to deny benefits did not violate ERISA and that LINA may not be subject to statutory penalties for failure to supply Plaintiff with a complete copy of her claim file.

---

[27] See Doc. 24, Order Dated May 13, 2013.

[28] See Doc. 65, Joint Mot. to Extend Dispositive Mot. Deadline.

[29] Doc. 78, Pl.'s Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J.

**A.    Wrongful Denial of Benefits**

**1.    Standard of Review**

ERISA permits a person denied benefits under an employee benefit plan to challenge that denial in federal court.  29 U.S.C. § 1001 et seq.; see § 1132(a)(1)(B).  The United States Supreme Court has held that the denial of benefits under an ERISA plan is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Dutka ex rel. Estate of T.M. v. AIG Life Ins. Co., 573 F.3d 210, 212 (5th Cir. 2009).  If the plan grants to the administrator such discretionary authority, the reviewing court applies an "abuse of discretion" standard.  See Clayton v. ConocoPhillips Co., 722 F.3d 279, 290 (5th Cir. 2013).

"Discretionary authority cannot be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator." Wildbur v. ARCO Chem. Co., 974 F.2d 631, 636 (5th Cir. 1992) (citing Cathey v. Dow Chem. Co. Med. Care Program, 907 F.2d 554, 558 (5th Cir. 1990).  The courts do not require any particular "linguistic template;" rather, the Plan must be read "as a whole" to determine whether it confers discretionary authority upon the plan administrator or fiduciary.  Wildbur, 974 F.2d at

9

636.

The Fifth Circuit "reads <u>Bruch</u> as speaking only to questions of law; thus, with or without a discretion clause, a district court rejects an administrator's factual determinations in the course of a benefits review only upon the showing of an abuse of discretion." <u>Dutka</u>, 573 F.3d at 212.  In the ERISA context, the Fifth Circuit has "considered the question of the cause of death to be a factual determination."  <u>Id.</u>  Accordingly, the court will review LINA's determination that Robert's death was caused by his driving while intoxicated for abuse of discretion.

The parties disagree over the standard of review to be applied to LINA's legal determination that Robert's driving while intoxicated made his accident foreseeable and therefore not a "covered accident" as defined by the Policy.  Defendants contend that the Plan affords discretion through the Policy itself and a separate document, the "Employee Welfare Benefit Plan Appointment of Claim Fiduciary" ("ACF").  Plaintiff argues that the Policy language is insufficient to trigger the application of abuse of discretion review and that the ACF was not integrated into the Plan.

### a. Whether the ACF Conferred Discretionary Authority on LINA

Defendants maintain that the Plan is comprised of multiple "plan documents," including both the Policy and the ACF, which contain enforceable Plan terms.  Plaintiff, in contrast, argues

10

that the ACF does not set forth terms or conditions of the Plan.

The ACF appears to contain a grant of discretion from GEICO to LINA.  The ACF provides that LINA, as the Claim Fiduciary, "shall have the authority, in its discretion, to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact."[30]

However, as Plaintiff notes, the ACF identifies the "Policy or Agreement Number(s)" to which it relates as "FLK980028."[31]  The policy number for Plaintiff's Policy, OK 826414, does not appear in the ACF.  Defendants offer no explanation for this apparent discrepancy, and the court concludes that there is no evidentiary connection between the ACF and the Policy.

Even if Defendants were to be able to cure this inconsistency, their arguments that the ACF is a "plan document" capable of triggering abuse of discretion review are unavailing.

There is no document before the Court that, on its face, defines the term "plan documents."  The Policy does, however, contain an integration clause providing that "[t]his Policy, including the endorsements, amendments and any attached papers constitutes the entire contract of insurance."[32]  Plaintiff claims

---

[30]    Doc. 72-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of M. James p. 106.

[31]    Id.

[32]    Id. p. 95.

that the ACF was not attached to the Policy, and, therefore, this provision compels the conclusion that the ACF is extrinsic to the Plan.  Defendants appear to concede that the ACF was not attached to the Policy, but nonetheless maintain that it is a "plan document" capable of triggering abuse of discretion review, relying on Raybourne v. Cigna Life Ins. Co. of New York, 576 F.3d 444 (7th Cir. 2009).[33]

In Raybourne, the Seventh Circuit considered what appears to have been an identical form and rejected the plaintiff's theory that the ACF was extrinsic to the plan.  Raybourne, 576 F.3d at 448-49.  There, the plaintiff complained that he did not receive the ACF until litigation was underway and that the ACF was neither incorporated nor referenced anywhere in the plan.  See id. at 448.

The court found that "the language of the [ACF] explain[ed] why [the plaintiff] did not receive it—it state[d] that the plan administrator must describe its discretion 'in Summary Plan Documents furnished to Participants.'"  Id.  The Summary Plan Document provided to the plaintiff described the plan's grant of discretion and explained that the "actual provisions of the Plan [were] set forth in the insurance policy and the [ACF]."  Id.  The court concluded that because the Summary Plan Document "refer[red] to the [ACF] and explain[ed] the discretion that it confer[ed,] . . . the [ACF] [was] a plan document."  Id. at 449.

---

[33]     See Doc. 87, Defs.' Reply in Supp. of Mot. for Summ. J. p. 2.

In the case at hand, the ACF also provided that the "Plan Administrator shall include the foregoing in Summary Plan Descriptions furnished to Participants."[34]   Unlike in <u>Raybourne</u>, however, the record in this case does not contain any Summary Plan Document explaining the ACF or stating that the ACF sets forth provisions of the Plan.   Additionally, while in this case the Policy contained an integration clause, there was no such provision discussed in <u>Raybourne</u>.

Accordingly, the court finds that the ACF cannot trigger an abuse of discretion review, as the evidence does not support Defendants' contention that the ACF was incorporated into the Plan. <u>See</u> <u>Barbu v. Life Ins. Co. of N. Am.</u>, No. 12-cv-1629 (JFB)(WDW), 2013 WL 6690402, at *5-*7 (E.D.N.Y Dec. 19, 2013) (unpublished) (finding that <u>Raybourne</u> did not compel the conclusion that the ACF at issue was a "plan document," in part because the policy at issue contained an integration clause and the Summary Plan Document referencing the ACF did not state that the ACF set forth provisions of the plan).

**b.** **<u>Whether the Policy Conferred Discretionary Authority on LINA</u>**

The determination of the standard of review to be applied therefore turns on whether the Policy itself contained the requisite grant of discretionary authority.   Defendants contend

---

[34]     Doc. 72-1, Ex. A to Defs.' Mot. for Summ. J., Aff. of M. James p. 106.

that the Policy's "Proof of Loss" provision conferred such discretion. This provision stated that "[w]ritten or authorized electronic proof of loss satisfactory to Us must be given to Us at Our office, within 90 days of the loss for which claim is made."[35]

While the Fifth Circuit has not considered whether similar "satisfactory to us" language confers discretionary authority upon an administrator or fiduciary, the issue has been examined by other circuits, with the Sixth, Eighth, Tenth, and Eleventh Circuits finding such language to be sufficient, and the First, Second, Third, Fourth, Seventh, and Ninth Circuits requiring stricter clarity. See Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 168 (4th Cir. 2013); Gross v. Sun Life Assur. Co. of Can., 734 F.3d 1 (1st Cir. 2013), *15-*16; Frazier v. Life Ins. Co. of N. Am., 725, F.3d 560, 567 (6th Cir. 2013); Viera v. Life Ins. Co. of N.A., 642 F.3d 407, 414-17 (3d Cir. 2011); Feibusch v. Integrated Device Tech., Inc. Emp. Benefit Plan, 463 F.3d 880, 884 (9th Cir. 2006); Tipplitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1234 (11th Cir. 2006); Diaz v. Prudential Ins. Co. of Am., 424 F.3d 635, 639-40 (7th Cir. 2005); Nance v. Sun Life Assurance Co. of Can., 294 F.3d 1263, 1267-68 (10th Cir. 2002); Ferrari v. Teachers Ins. & Annuity Assoc., 278 F.3d 801, 806 (8th Cir. 2002); Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir. 1999). District courts within the Fifth Circuit have likewise taken

---

[35]     Id. p. 92.

differing approaches.  Compare <u>Mercer v. Life Ins. Co. of N. Am.</u>, No. 11-0372, 2011 WL 4404053, at *5 (W.D. La. Aug. 30, 2011) (unpublished), <u>with</u> <u>Magee v. Life Ins. Co. of N. Am.</u>, 261 F.Supp.2d 738, 749 (S.D. Tex. 2003).

The Fifth Circuit has noted, however, that where it has found ERISA instruments to grant discretionary authority, "the express language in those instruments [has been] unambiguous in its design to grant discretion regarding entitlements to the fiduciary or administrator." <u>Cathey</u>, 907 F.2d at 559.  For example, in <u>Lowry v. Bankers Life & Casualty Retirement Plan</u>, 871 F.2d 522, 525 n.5 (5th Cir.), <u>cert. denied</u>, 493 U.S. 852 (1989), an ERISA-regulated plan conferred upon the administrator the power "to determine all questions arising" in the administration of the plan, "including the power to determine the rights or eligibility of Employees and Participants and their beneficiaries, and the amounts of their respective interests." <u>Lowry</u>, 871 F.2d at 524.  The court concluded that this "unambiguous language . . . mandates deference to the plan administrators under the circumstances of this case." <u>Id.</u> at 524-25.  Similarly, in <u>Schadler v. Anthem Life Ins. Co.</u>, 147 F.3d 388, 395 n.7 (5th Cir. 1996), the Fifth Circuit applied deferential review because the plan provided that the plan administrator "reserves the right to determine eligibility and construe the terms of the Plan."

Courts that have found the plan language at issue here to be

insufficient to confer the plan administrator or fiduciary with discretionary authority have emphasized "the inherent ambiguity in the wording of the phrase 'proof satisfactory to us.'" <u>Cosey</u>, 735 F.3d at 166 (collecting cases).   As the Second Circuit has explained, such language could be construed as "merely stat[ing] the obvious point that the administrator is the decision-maker, at least in the first instance." <u>Kinstler</u>, 181 F.3d at 252.   Other courts have observed that the phrase "could be interpreted as describing the inevitable prerogative of a plan administrator to insist that the *form* of proof complies with prescribed standards, on the theory that an administrator ought to be able to require production of particular types of proof that the administrator deems most reliable." <u>Cosey</u>, 735 F.3d at 166 (internal quotation marks omitted) (citing <u>Diaz</u>, 424 F.3d at 637, 639; <u>Viera</u>, 642 F.3d at 417; <u>Gross</u>, 734 F.3d at 15).

As the Ninth Circuit noted, addressing similar language and context, this language "simply does not clearly indicate that [the administrator] has discretion to grant or deny benefits.   Indeed, the language makes no reference whatsoever to granting or denying benefits, and is included under the policy heading, 'What is considered proof of claim?'" <u>Feibusch</u>, 463 F.3d at 884.

These courts have also based their conclusion on the "well-settled principle that ambiguities in an ERISA plan must be construed against the administrator responsible for drafting the

16

plan." <u>Cosey</u>, 735 F.3d at 168; <u>see</u> <u>e.g.</u>, <u>Hansen v. Continental</u> <u>Ins. Co.</u>, 940 F.2d 971, 983 (5th Cir. 1991) ("In contracts of insurance generally, ambiguities are resolved against the drafter.").

In view of the ambiguity of the phrase "satisfactory to us" and the requirement that ERISA plans be construed in favor of the insured, the court finds that the plan at issue does not meet the Fifth Circuit's requirement that plan language "expressly confer[] [discretionary] authority on the administrator." <u>Wildbur</u>, 974 F.2d at 636 (citing <u>Cathey</u>, 907 F.2d at 558).

In making this determination, the court has considered the decisions of district courts in this circuit that have come to the opposite conclusion. Defendants cite to <u>Magee</u>, decided in 2003, which relied upon <u>Jarrell v. Reliance Std. Life Ins. Co.</u>, No. 3:96-CV-1542-G, 1996 WL 735561, at *5 (N.D. Tex. Dec. 13, 1996) (unpublished) and the Sixth Circuit's decision in <u>Yeager v.</u> <u>Reliance Std. Life Ins. Co.</u>, 88 F.3d 376, 381 (6th Cir. 1996). <u>See</u> <u>Magee</u>, 261 F.Supp.2d at 749. District courts in this circuit that have subsequently made the same determination have cited to <u>Magee</u> and <u>Jarrell</u>. <u>See</u> <u>e.g.</u>, <u>Estate of Thompson v. Sun Life Assur. Co.</u> <u>of Can.</u>, 603 F.Supp.2d 898, 907 (N.D. Tex. 2008).

Since the decisions of <u>Magee</u> and <u>Jarrell</u>, however, the precedential landscape has changed dramatically. At the time <u>Magee</u> was decided, there existed "widespread acceptance of the view that

the language here trigger[ed] discretionary review." <u>Bringham v.</u>
<u>Sun Life of Can.</u>, 317 F.3d 72, 82 (1st Cir. 2003).  Precedent in the
First, Sixth, Seventh, Eighth, and Tenth Circuits dictated that
"satisfactory to us" language was sufficient to confer discretion
upon an administrator or fiduciary.  <u>See</u> <u>Brigham</u>, 317 F.3d at 81-
82; <u>Nance</u>, 294 F.3d at 1267-68; <u>Ferrari</u>, 278 F.3d at 806; <u>Yeager</u>,
88 F.3d at 381; <u>Donato v. Metropolitan Life Ins. Co.</u>, 19 F.3d 375,
379 (7th Cir. 1994).  Only the Second Circuit had suggested-in
dicta-that such language may be inadequate to convey discretion.
<u>See</u> <u>Brigham</u>, 317 F.3d at 82 (citing <u>Kinstler</u>, 181 F.3d at 252).

Although a consensus has yet to emerge, five circuits have, in
the interim, adopted the view that stricter clarity in plan
language is required to convey such discretion, including the First
and Seventh Circuits, which departed from their own precedent.  <u>See</u>
<u>Cosey</u>, 735 F.3d at 168; <u>Gross</u>, 734 F.3d at *15-*16; <u>Viera</u>, 642 F.3d
at 414-17; <u>Feibusch</u>, 463 F.3d at 884; <u>Diaz</u>, 424 F.3d at 639-40.

In light of this shift and the reasons set forth above, the
court believes that the Fifth Circuit would likely agree with the
First, Second, Third, Fourth, Seventh, and Ninth Circuits that the
policy language in this case does not confer discretion upon an
administrator or fiduciary to determine eligibility for benefits.

## 2.  **Scope of Admissible Evidence**

The Fifth Circuit examined "the scope of admissible evidence
and permissible discovery in an ERISA action to recover benefits

18

under Section 1132(a)(1)(B)" in <u>Crosby v. La. Health Serv. & Indem.</u>
<u>Co.</u>, 647 F.3d 258 (2011).[36]  Interpreting an earlier Fifth Circuit
decision, the court held that evidence is inadmissible in an ERISA
action "to resolve the merits of the coverage determination–i.e.
whether coverage should have been afforded under the plan–unless
the evidence is in the administrative record, relates to how the
administrator has interpreted the plan in the past, or would assist
the court in understanding medical terms and procedures." <u>Crosby</u>,
647 F.3d at 263 (citing <u>Vega v. Nat'l Life Ins. Servs., Inc.</u>, 188
F.3d 287, 299-300 (5th Cir. 1999) (en banc), <u>overruled on other</u>
<u>grounds by</u> <u>Metro. Life Ins. Co. v. Glenn</u>, 544 U.S. 105 (2008), <u>as</u>
<u>recognized by</u> <u>LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.</u>,
703 F.3d 835 (5th Cir. 2013).

The court further found that this rule does not "prohibit the
admission of evidence to resolve other questions that may be raised
in an ERISA action," including, "(1) whether the administrative
record is complete, (2) whether the plan administrator complied
with ERISA's procedural regulations, and (3) whether and to what
extent there may be a conflict of interest created by a plan
administrator's dual role in making benefits determinations and

_____

[36]    The court in <u>Crosby</u> did not state explicitly that its holding applied
when courts conduct a de novo review.  However, the court stated that it was
addressing "the scope of admissible evidence in ERISA actions under Section
1132(a)(1)(B)," and district courts have applied its holding without reference
to the standard of review being applied.  <u>See</u> <u>e.g.</u>, <u>Couvillion v. Reddy Ice</u>
<u>Corp.</u>, No. 12-204-SDD-RLB, 2013 WL 3725153, at *3 (M.D. La. July 12, 2013);
<u>Fluitt v. Mutual of Omaha Ins. Co.</u>, No. 12-2800, 2013 WL 3930090, at *2 (E.D. La.
July, 26, 2013).

funding the plan." <u>Couvillion v. Reddy Ice Corp.</u>, No. 12-204-SDD-RLB, 2013 WL 3725153, at *3 (M.D. La. July 12, 2013) (citing <u>Crosby</u>, 647 F.3d at 263). "A discovery request for such information may be relevant and thus permissible under federal discovery rules." <u>Crosby</u>, 647 F.3d at 263. <u>Crosby</u> cautioned, however, that "district courts must monitor discovery closely" in ERISA cases, being "mindful of the limitations placed on the frequency and extent of discovery under the federal rules." <u>Id.</u> at 264.

Defendants have moved to strike Plaintiff's designated experts and summary judgment exhibits as inadmissible evidence under <u>Crosby</u>. Plaintiff offers as summary judgment evidence an ACF from a plan not at issue here and the Declaration of James.[37] Plaintiff does not offer an explanation of how this evidence might fall into the categories of evidence admissible in ERISA cases, as set forth in <u>Crosby</u>. Therefore, the court finds that this evidence may not be considered.

Plaintiff also offers as summary judgment evidence documents that purport to be insurance polices issued by LINA not at issue here and policy forms exchanged between LINA and the state

---

[37]   <u>See</u> Doc. 96-3, Ex. B to Pl.'s Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., ACF; Doc. 96-1, Pl.'s Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Decl. of James.

insurance boards of Maryland, Kentucky, and Virginia.[38]  Plaintiff
has introduced this evidence to demonstrate that "LINA knows how to
write an intoxication exclusion and does so routinely."[39]  As this
type of evidence does not fit into a category exempt from the rule
that evidence in ERISA cases must be limited to the administrative
record, the court finds that this evidence may not be considered.
See Crosby, 647 F.3d at 263.

Plaintiff has also included as summary judgment evidence two
internal LINA documents that were not in effect when Plaintiff's
claim was decided and that were not considered by LINA in
connection with Plaintiff's claim for benefits.[40]  These documents
appear to reflect a policy of not denying claims involving
accidents occurring while the claimant was intoxicated solely on
the grounds that the injury or loss was foreseeable.[41]  The court

---

[38]    Doc. 96-8, Ex. G to Pl.'s Corrected Resp. to Defs.' Mot. for Summ.
J. & Mot. for Partial Summ. J., Policy No. OK 8097091; Doc. 96-9, Ex. H to Pl.'s
Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Policy
No. OK 961202; Doc. 96-5, Ex. D to Pl.'s Corrected Resp. to Defs.' Mot. for Summ.
J. & Mot. for Partial Summ. J., Md. Specimen Policy; Doc. 96-6, Ex. E to Pl.'s
Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J.,
Correspondence with Ky. Dep't of Ins.; Doc. 96-7, Ex. F to Pl.'s Corrected Resp.
to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Correspondence with Va.
Dep't of Ins.

[39]    Doc. 96, Pl.'s Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for
Partial Summ. J. p. 29.

[40]    Doc. 96-10, Ex. I to Pl.'s Corrected Resp. to Defs.' Mot. for Summ.
J. & Mot. for Partial Summ. J., Undated Internal LINA Doc.; Doc. 96-11, Ex. J to
Pl.'s Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J.,
Internal LINA Doc. Dated Feb. 23, 1993.

[41]    Doc. 96-10, Ex. I to Pl.'s Corrected Resp. to Defs.' Mot. for Summ.
J. & Mot. for Partial Summ. J., Undated Internal LINA Doc.; Doc. 96-11, Ex. J to
Pl.'s Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J.,
Internal LINA Doc. Dated Feb. 23, 1993.

finds this evidence to be admissible, as it "relate[s] to how [LINA] has interpreted terms of the plan in other instances." Estate of Bratton v. Nat'l Union Fire Ins. Co., 215 F.3d 516, 521 (5th Cir. 2000); see also Schultz v. Metro. Life Ins. Co., 872 F.2d 676, 679 (5th Cir. 1989) (noting, in reviewing a district court's de novo review of a benefit determination, that "the conduct of the parties before the advent of a controversy may be relied upon to discover the parties' understanding of the contract.")

Plaintiff also submits the declaration and report of designated expert Elliott S. Flood, Esq., ("Flood").[42]   In his report, Flood opines on "the scope of discovery requests by the plaintiff that would reveal relevant evidence," "[t]he influence of LINA's conflict of interest in the denial of the plaintiff's claim," "[w]hether LINA's interpretation of its policy is consistent with a fair reading of that policy," and "[w]hether there was an abuse of discretion in the denial of the plaintiff's claim."[43]   Flood's declaration reproduced portions of his report addressing LINA's conflict of interest and whether LINA fairly interpreted the Policy.[44]

Of these topics, only evidence relating to LINA's conflict of

---

[42]    See Doc. 53-1, Ex. A to Pl.'s Am. Designation of Expert Witness List, Expert Report of Flood; Doc. 79-1, Ex. A to Supp. to Pl.'s Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Decl. of Flood.

[43]    See Doc. 53-1, Ex. A to Pl.'s Am. Designation of Expert Witness List, Expert Report of Flood ¶¶ 3-6.

[44]    See Doc. 79-1, Ex. A to Supp. to Pl.'s Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Decl. of Flood.

interest may be admissible under <u>Crosby</u>.  Defendants argue that Flood is not qualified to give opinions regarding ERISA and that his opinions are not based on reliable evidence.  <u>See generally</u> Fed. R. Evid. 702 (stating witness may qualify as expert through "knowledge, skill, experience, training, or education"); <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993) (establishing district courts as "gatekeeper" for admitting scientific expert testimony); <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (extending <u>Daubert</u> to apply to non-scientific experts).  ERISA actions brought under Section 1132(a)(1)(B), such as this one, are resolved either by summary disposition or a bench trial.  In <u>Whitehouse Hotel Ltd. Partnership v. C.I.R.</u>, 615 F.3d 321, 330 (5th Cir. 2010), the Fifth Circuit noted that "the importance of the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." <u>Whitehouse Hotel</u>, 615 F.3d at 330 (citing <u>Gibbs v. Gibbs</u>, 210 F.3d 491, 500 (5th Cir. 2000)).

Taking into consideration this diminished role, the court is satisfied that Flood is sufficiently qualified and his opinions sufficiently reliable.  Accordingly, the court finds those portions of Flood's declaration and expert report addressing LINA's conflict of interest to be admissible.  However, the court will consider this evidence only in conducting its review of LINA's factual

determinations for abuse of discretion, not its de novo review of LINA's legal determinations.   See Glenn, 554 U.S. at 114-17 (finding that courts must consider conflict of interest as a factor when evaluating whether a plan administrator or fiduciary abused its discretion).

Lastly, Plaintiff offers the report of designated expert David S. Croson, Ph.D. ("Croson").[45]   In his report, Croson states that he was "asked to prepare a financial analysis detailing the amounts claimed by the James estate from LINA, combining the benefits that may be due under the LINA accidental death policy with a claim on the profits made by LINA as a result of retaining these funds as part of LINA's equity rather than paying them out."[46]   Testimony regarding alleged profits earned by LINA may have been relevant to Plaintiff's claim for breach of fiduciary duty and surcharge damages.   This claim, however, has been dismissed.[47]   No testimony is needed as to the amount allegedly due under the Policy, as this amount is not in dispute.   Because expert testimony is permitted only to the extent that it "will assist the trier of fact to understand the evidence or to determine a fact in issue," the court finds that Croson's report is not admissible.   Fed. R. Evid. 702.

---

[45]   See Doc. 53-2, Ex. B to Pl.'s Am. Designation of Expert Witness List, Expert Report of Croson.

[46]   Id. p. 1.

[47]   See Doc. 69, Mem. & Recommendation Dated Oct. 7, 2013; Doc. 77, Order Dated Nov. 1, 2013.

In sum, the court finds Plaintiff's evidence at issue to be inadmissible with the exception of Flood's report and declaration to the extent that they address LINA's conflict of interest and the internal LINA documents addressing the use of foreseeability as a basis for denial in cases where the insured was intoxicated.[48]

### 3.   __LINA's Factual Determination__

The court reviews LINA's factual determination that Robert died as a result of driving while intoxicated for abuse of discretion.  A claims administrator does not abuse its discretion in making a factual finding unless the decision is arbitrary and capricious.  Meditrust Fin. Serv. Corp. v. Sterling Chem., Inc., 168 F.3d 211, 214 (5th Cir. 1999).  A decision is not arbitrary and capricious if it is supported by substantial evidence.  Ellis v. Liberty Life Assurance Co., 394 F.3d 262, 273 (5th Cir. 2004). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  "[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low

---

[48]     See Doc. 79-1, Ex. A to Supp. to Pl.'s Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Decl. of Flood; Doc. 53-1, Ex. A to Pl.'s Am. Designation of Expert Witness List, Expert Report of Flood; Doc. 96-10, Ex. I to Pl.'s Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Undated Internal LINA Doc.; Doc. 96-11, Ex. J to Pl.'s Corrected Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Internal LINA Doc. Dated Feb. 23, 1993.

end." <u>Holland v. Int'l Paper Co. Ret. Plan</u>, 576 F.3d 240, 246 (5th Cir. 2009) (quoting <u>Corry v. Liberty Life Assur. Co. of Boston</u>, 499 F.3d 389, 398 (5th Cir. 2007)).

A conflict of interest exists where a plan administrator both evaluates claims for benefits and pays benefits claims. <u>Glenn</u>, 554 U.S. at 112.  A reviewing court should consider such a conflict as a factor in determining whether the plan administrator abused its discretion.   <u>Id.</u> at 108.   The significance of the conflict "depend[s] upon the circumstances of the particular case." <u>Id.</u> "The greater the evidence of conflict on the part of the administrator, the less deferential [a court's] abuse of discretion standard will be." <u>Vega</u>, 188 F.3d 287, at 295-97 (5th Cir. 1999)

LINA's dual role as the underwriter and claims administrator of the policy creates such a conflict of interest. <u>See</u> <u>Glenn</u>, 544 U.S. at 112.   However, the court finds that Plaintiff has not introduced compelling evidence that this conflict of interest affected LINA's decision in this case.  Plaintiff contends that an Annual Performance Objectives & Development Plan Template ("Performance Template") outlining LINA's performance expectations for claims handling personnel reveals that LINA incentivized these employees to delay or deny payment of claims.[49]  Plaintiff points to a section of the Performance Template entitled "Achieve Earnings

---

[49]    <u>See</u> Doc. 109-3, Ex. C to Pl.'s Supp. Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Performance Template.

in Support of 2012 Plan."[50]   This section indicates that employees should "[p]erform[] according to published Quality and Compliance standards that directly impact our financial results and business persistency."[51]   The section further lists objectives such as "[r]educ[ing] duration of pending claims through proactive investigation and follow up," and "[e]nsur[ing] that statutory and voluntary interest is calculated and paid accurately."[52]

Relying on Flood's declaration and expert report, Plaintiff argues that by evaluating claims handling personnel for "Achiev[ing] Earnings," LINA "charged" these employees with "bringing in . . . profit" to LINA, and that the "only way profits can be achieved in claims is by the delay in payment or denial of claims."[53]   Plaintiff has introduced no other evidence in support of its contention that LINA incentivized its claim handling personnel to delay or deny payment of claims.   The court finds this argument to be speculative and, accordingly, will review LINA's factual findings with "only a modicum less deference than [it] otherwise would."   Vega, 188 F.3d at 301.

LINA states that, in making its determination that Robert's death resulted from "operating a motor vehicle while intoxicated,"

---

[50]     Id. p. 3.

[51]     Id.

[52]     Id.

[53]     Doc. 109, Pl.'s Supp. Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J. pp. 2-5 (quoting Doc. 79-1, Ex. A to Supp. to Pl.'s Resp. to Defs.' Mot. for Summ. J. & Mot. for Partial Summ. J., Decl. of Flood ¶ 13.).

it considered the Policy, the Certificate of Death, the Police Crash Report, and the Virginia Office of the Chief Medical Examiner's reports.[54]   The Police Crash Report stated that Robert's vehicle ran off the road, over-corrected, and collided with a tree.[55]   The report further stated that there were no adverse weather conditions, no road defects, and that the roadway surface was dry.[56]   The Certificate of Death indicated that the cause of death was "inhalation of combustion products and thermal injury."[57] The toxicology reports received by the Virginia Office of the Chief Medical Examiner reported that Robert's blood alcohol level following the accident was 0.19 percent, more than twice the legal limit.[58]

The court finds that this record constitutes "such relevant evidence as a reasonable mind might accept as adequate to support [LINA's] conclusion" that Robert's death resulted from driving while intoxicated.  Ellis, 394 F.3d at 273.  Even considering the dual role performed by LINA as both administrator and underwriter, there exists substantial evidence in the record to support LINA's factual findings.  Accordingly, the court finds that Defendants are

---

[54]   See Doc. 72-1, Ex. A to Def.'s Mot for Summ. J., Aff. of M. James pp. 17-19.

[55]   See Doc. 72-1, Ex. A to Def.'s Mot for Summ. J., Aff. of M. James p. 62.

[56]   Id. at pp. 60-61.

[57]   Id. at 58.

[58]   Id. at p. 40.

entitled to summary judgment as to Plaintiff's challenge of LINA's determination that Robert's death was caused by his driving while intoxicated.

### 4.   LINA's Legal Determinations

Defendants contend in their motion for summary judgment that Plaintiff's claim that LINA incorrectly interpreted the Policy cannot survive abuse of discretion review.  Defendants do not argue that they are entitled to summary judgment under a de novo review of LINA's determination.  Because the court determines that the proper standard of review of LINA's interpretation of the Policy is de novo, the court finds that Defendants are not entitled to summary judgment as to Plaintiff's challenge of legal determinations made by LINA.

### B.   Failure to Provide Documents

Plaintiff has also made a claim for penalties which may be assessed under ERISA when a plan administrator "fails or refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant or beneficiary."  29 U.S.C. § 1132(c)(1)(B); see Abraham v. Exxon Corp., 85 F.3d 1126, 1132 (5th Cir. 1996).  ERISA provides that a plan administrator who fails to provide such information "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal."  29 U.S.C. § 1132(c)(1); see Abraham, 85 F.3d at 1132.

Defendants argue that ERISA contains no provision imposing this duty upon a claim administrator such as LINA. See e.g., Ross v. Rail Car Am. Group Disability Income Plan, 285 F.3d 735, 743-44 (8th Cir. 2002) (affirming the district court's dismissal of a Section 1132(c) claim against the claims administrator on the basis that Section 1132(c) only provides a cause of action against plan administrators). At least one district court within this circuit has declined to assess liability against a claim administrator on this basis. See Schultz v. Progressive Health, Life, & Disability Benefits Plan, 380 F.Supp.2d 780, 787 (S.D. Miss. 2005). In the absence of any contrary authority in support of Plaintiff's assertion that liability may in fact be assessed against a claim administrator under Section 1132(c), the court finds that Defendants are entitled to summary judgment as to this claim.

### IV.   Conclusion

Accordingly, the court **GRANTS** Plaintiff's Motion to Determine the Standard of Review (Doc. 61) to the extent that it determines the standard of review in resolving Defendants' Motion for Summary Judgment, **GRANTS IN PART, DENIES IN PART** Defendants' Amended Motion to Strike Plaintiff's Designated Experts (Doc. 58), and **GRANTS IN PART, DENIES IN PART** Defendants' Motion to Strike Plaintiff's Motion for Partial Summary Judgment and Summary Judgment Exhibits (Doc. 86). The court further **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 72) be **GRANTED IN PART, DENIED IN PART**.

**Should this Memorandum and Recommendation be adopted, the parties will have twenty days therefrom to refile dispositive motions for summary judgment. In accordance with this Memorandum and Recommendation, the court will review legal determinations made by LINA, including the interpretation of policy terms, de novo.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>7th</u> day of March, 2014.

Nancy K. Johnson
United States Magistrate Judge

31