IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SANDRA W. JAMES, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-2095 |
| | § | |
| LIFE INSURANCE COMPANY OF NORTH | § | |
| AMERICA AND GEICO CORPORATION | § | |
| VOLUNTARY GROUP ACCIDENT INSURANCE | § | |
| PLAN, | § | |
| *Defendant*. | § | |

## ORDER AFFIRMING & ADOPTING MAGISTRATE JUDGE'S MEMORANDUM, RECOMMENDATION, & ORDER

Pending before the court is the Magistrate Judge's Memorandum, Recommendation, and Order (the "MRO") (Dkt. 110) recommending that the defendants' motion for summary judgment (Dkt. 72) and plaintiff's motion to determine the standard of review be granted in part and denied in part. The parties also appeal certain orders from Magistrate Judge Nancy Johnson's ("Judge Johnson") opinion deciding defendants' amended motion to strike plaintiff's designated experts (Dkt. 58) and motion to strike plaintiff's motion for partial summary judgment and summary judgment exhibits (Dkt. 86). Having reviewed the MRO, pleadings, the objections and responses (Dkts. 111–15), and the applicable law, the court **OVERRULES** the parties' objections, **AFFIRMS** Judge Johnson's orders, and **ADOPTS** Judge Johnson's recommendations in all respects.

## I. BACKGROUND

This case arises out of the tragic death of plaintiff Sandra James's ("plaintiff") husband, Robert L. James ("Robert"). Dkt. 1 (complaint) at 2 ¶ 7. On May 21, 2010, Robert died in a single vehicle accident in Caroline County, Virginia, after his car collided with a tree and caught fire. *Id.* The medical examiner stated that Robert's cause of death was "inhalation of combustion products

and thermal injury." *Id.* at 2 ¶ 8.  The medical examiner listed the manner of death as an "accident." *Id.*  A toxicology report revealed that Robert had a blood alcohol level of 0.19%.  *Id.* at 3 ¶ 8.

At the time of Robert's death, plaintiff was a GEICO Corporation ("GEICO") employee and a member of its Accidental Death & Dismemberment ("AD&D") insurance program within the GEICO Consolidated Welfare Benefit Plan (the "plan").  *Id.* at 3 ¶ 9.  Plaintiff's insurance covered accidental deaths of herself and/or members of her family, including her spouse.  *Id.*  The coverage amount at the time of Robert's death was $300,000.  *Id.*  The insurance was provided by defendant Life Insurance Company of North America ("LINA") under Group Accident Policy OK 826414 (the "policy").  *Id.* at 3 ¶ 10.  LINA was designated as the claims administrator for the plan.  *Id.*

The policy's AD&D benefits were triggered when "the Covered Person suffer[ed] a Covered Loss resulting directly and independently of all other causes from a Covered Accident . . . ."  Dkt. 72, Ex. A at 97.  A "Covered Accident" was defined as a "sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or a Covered Loss" that is "not contributed to by disease, Sickness [sic], or mental illness," and "is not otherwise excluded" by the policy.  *Id.* at 85.

About a month after Robert's death, on June 16, 2010, plaintiff filed a benefits claim with LINA, seeking the policy's accidental death benefit.  *Id.* at 55–56.  LINA denied plaintiff's claim on August 4, 2010.  *Id.* at 25–28.  LINA found that the crash was not "unforeseen" as required by the policy, because it was caused by Robert's driving under the influence with a blood alcohol concentration ("BAC") of 0.19%, a level more than two times above the legal limit (0.08%) in the Commonwealth of Virginia.  *Id.* at 26.  LINA reasoned that because studies have shown that individuals with BACs between 0.11 and 0.20 percent suffer serious physical impairments including

2

slowed reaction time and gross motor control, Robert's death was not an unforeseen event while he operated a motor vehicle with a BAC at the high end of that range. *Id.*

On August 27, 2010, plaintiff appealed LINA's decision. *Id.* at 21. LINA denied plaintiff's appeal on September 22, 2010. *Id.* at 16–18. LINA reiterated that "we have determined that Mr. James' death was the foreseeable outcome of his intentional conduct and thus not accidental in nature." *Id.* at 18. Plaintiff then filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover the GEICO AD&D benefits to which she claims to be entitled. Dkt. 1. She contends that LINA's denial of her claim was based on an incorrect factual determination and an erroneous interpretation of the policy. *Id.* at 7. She further alleged that she is owed statutory penalties of up to 100 dollars per day for LINA's alleged failure to supply a complete copy of her claim file, and that she is entitled to surcharge damages for LINA's alleged breach of fiduciary duty by denying plan benefits to derive unjust profits. *Id.* at 12–13.

On November 1, 2013, this court adopted Judge Johnson's Memorandum & Recommendation and dismissed plaintiff's claim for breach of fiduciary duty. Dkt. 77. Now pending before the court are the parties' objections to Judge Johnson's recommendations and orders relating to the cross-motions for summary judgment on plaintiffs' claims and motions to strike.

## II. LEGAL STANDARD

After referring a case for full pretrial management to a magistrate judge, the court must review *de novo* any of the magistrate's recommendations on dispositive matters to which the parties have properly objected. *See* FED. R. CIV. P. 72(b)(3). The court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* Moreover, when the magistrate issues an order deciding a nondispositive

matter, the district court may overrule or modify the magistrate's orders only to the extent they are

"clearly erroneous or contrary to law." FED. R. CIV. P. 72(a).

### III. ANALYSIS

Judge Johnson's MRO addressed the following motions, which the court will review in turn: (1) plaintiff's motion for partial summary judgment (Dkt. 78); (2) defendants' motion to strike plaintiff's motion for partial summary judgment (Dkt. 86); (3) defendants' amended motion to strike plaintiff's designated experts (Dkt. 58); (4) defendants' motion to strike plaintiff's exhibits (Dkt. 86); (5) defendants' motion for summary judgment (Dkt. 72); and (6) plaintiff's motion to determine the standard of review (Dkt. 61).

#### A.       *Plaintiff's Motion for Partial Summary Judgment & Defendants' Motion to Strike*

Plaintiff filed an untimely motion for partial summary judgment on November 1, 2013, Dkt. 78, without requesting leave to file late or otherwise providing the court with good cause to modify the Rule 16 scheduling order. *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003) ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."). In response, defendants moved to strike plaintiff's motion for partial summary judgment. Dkt. 86. Judge Johnson granted the defendants' motion to strike and ordered that plaintiff's motion be stricken from the record. Dkt. 110 at 8. Plaintiff did not object to this order, and Judge Johnson's order granting defendant's motion to strike is **AFFIRMED**.

### B.      *Defendants' Motions to Strike Evidence*

Before considering Judge Johnson's recommendations regarding defendants' motion for summary judgment, the court will address the parties' objections as to the scope of admissible evidence in this proceeding.

### 1.      *Legal Standard*

In an ERISA benefits claim under § 1132(a)(1)(B), a plaintiff is generally limited to presenting evidence from the administrative record on the issue of coverage, unless the evidence relates to how the administrator interpreted the plan in the past or would assist the court in understanding medical terms and procedures. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011). Moreover, evidence outside the administrative record may be offered for certain discrete purposes beyond coverage, namely to determine "[1] the completeness of the administrative record; [2] whether the plan administrator complied with ERISA's procedural regulations; and [3] the existence and extent of a conflict of interest created by an administrator's dual role in making benefits determinations and funding the plan." *Id.*

### 2.      *Plaintiff's Objections*

Plaintiff objects to Judge Johnson's order excluding (1) three form filings submitted to state insurance departments providing the policyholder with the option of including or excluding an express intoxication exclusion and (2) two policy documents that contain an express intoxication exclusion. Dkt. 112 at 5–7. Judge Johnson found that because "this type of evidence does not fit into a category exempt from the rule that evidence in ERISA cases must be limited to the administrative record, . . . this evidence may not be considered." Dkt. 110 at 21. Plaintiff argues that LINA's ability to include an express intoxication exclusion tends to show that LINA did not

uniformly interpret the foreseeability test within the Covered Accident definition, as an express exclusion would be unnecessary if the general coverage provision already excluded events caused by intoxication.  Dkt. 112 at 6.

This court agrees with Judge Johnson's finding.  The fact that LINA has included express intoxication exclusions in other policies is irrelevant to how it construed the foreseeability test itself in other benefits determinations.  It merely shows that LINA could draft additional contract terms for different policies.  This evidence, therefore, is not admissible under any *Crosby* category, and Judge Johnson's order is not clearly erroneous.  Plaintiff's objections regarding the policy evidence are **OVERRULED**.

### 3. *Defendants' Objections*

Defendants object to the MRO's denial of their motion to strike (1) two LINA documents regarding past determinations of foreseeability in intoxication situations; and (2) Elliot Flood's expert testimony on LINA's conflict of interest.  Dkt. 111 at 1–5.

First, regarding the potentially outdated LINA documents, Judge Johnson acknowledged that these documents were not in effect when plaintiff's claim was decided and also were not considered in connection with plaintiff's claim.  Dkt. 110 at 21.  However, Judge Johnson found that the documents were admissible because they were relevant to LINA's prior interpretation of plan terms. *Id.* at 21–22.  The case law in these circumstances is sparse, but this court finds persuasive support for Judge Johnson's holding in the Fifth Circuit's allowance of certain documents and evidence relevant to the parties' past interpretation of plan terms. *See, e.g.*, *Schultz v. Metro. Life Ins. Co.*, 872 F.2d 676, 679 (5th Cir. 1989) (holding that "the conduct of the parties before the advent of a controversy may be relied upon to discover the parties' understanding of the contract.").  And while

6

the court can envision certain documents so outdated as to question their admissibility, these documents do not fall into that category, and Judge Johnson's holding is not clearly erroneous.

Second, with regard to Flood's expert testimony, Judge Johnson found that his opinions were generally inadmissible except those that related to LINA's conflict of interest.  Dkt. 110 at 22–23.  Defendants concede that conflict evidence is generally admissible under *Crosby*, but they object to the admission of Flood's testimony on grounds that it is neither credible nor reliable.  Dkt. 111 at 3–4 (citing Fed. R. Evid. 702).  This court agrees with defendants that Flood's testimony is questionable under a full *Daubert* analysis, but the court cannot say that Judge Johnson's admission of this testimony was clearly erroneous, particularly in a non-jury proceeding.  Defendants' objections to Judge Johnson's admission of these items are **OVERRULED**.

### 4. *Conclusion*

As both parties' objections to Judge Johnson's evidentiary rulings have been overruled, the court **AFFIRMS** Judge Johnson's order that defendants' amended motion to strike plaintiff's designated experts (Dkt. 58) be **GRANTED IN PART & DENIED IN PART** and defendants' motion to strike plaintiff's exhibits (Dkt. 86) be **GRANTED IN PART & DENIED IN PART**.

### C. *Defendants' Motion for Summary Judgment & Plaintiff's Motion to Determine the Standard of Review*

Defendants move for summary judgment as to two of plaintiff's ERISA claims for: (1) statutory penalties under § 1132(c) for failure to supply plaintiff with a complete copy of her claim file; and (2) damages for LINA's benefits denial.  Dkt. 72.  In a related filing, plaintiff moves for a determination of the standard of review for her benefits claim, arguing that LINA's factual and legal determinations should be reviewed *de novo*, with no discretion afforded to LINA's decision-

making. Dkt. 61. The court will first address Judge Johnson's recommendations as to defendants' summary-judgment points, the second of which will subsume an evaluation of plaintiff's motion to determine the standard of review.

### 1.      *Failure to Provide Documents*

Statutory penalties under ERISA may be assessed when a plan administrator "fails or refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c)(1)(B). If a plan administrator fails to provide the required information, it "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal." *Id.*

Defendants argue that this statutory duty, by its plain language, only applies to plan administrators, not claims administrators like LINA. Dkt. 72 at 23–24. Judge Johnson agreed and recommended that summary judgment be granted as to this claim. Dkt. 110 at 30. Plaintiff does not object to this recommendation, and the court agrees that LINA has no statutory duty in these circumstances to provide the requested information. *See Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009) (collecting cases). Accordingly, defendants' motion for summary judgment as to the § 1132(c) claim for penalties is **GRANTED**.

### 2.      *Wrongful Denial of Benefits*

Plaintiff's complaint alleges that LINA's denial was based on an incorrect factual determination regarding the circumstances of Robert's death and an incorrect legal interpretation of the policy. Dkt. 1 at 7. As to both of these determinations, plaintiff argues that the court should apply a *de novo* standard of review and find that LINA's denial violates § 1132(a)(1)(B). *Id.*; Dkt. 61 at 5. Defendants contend that the court should apply an abuse of discretion standard of review

to LINA's factual and legal determinations and uphold its denial of benefits under the policy.  Dkt. 72.  Refusing to accept either position in full, Judge Johnson recommended an application of an abuse of discretion standard to LINA's factual determinations and a *de novo* standard to its legal decisions.  The court will address LINA's determinations of fact and law in turn.

### a.    Fact Determinations

Judge Johnson found, under controlling precedent, that LINA's fact determinations are owed deference under an abuse of discretion standard, rather than being reviewed *de novo*.  Dkt. 110 at 10 (citing *Dutka ex rel. Estate of T.M. v. AIG Life Ins. Co.*, 573 F.3d 210, 212 (5th Cir. 2009) ("[W]ith or without a discretion clause, a district court rejects an administrator's factual determinations in the course of a benefits review only upon the showing of an abuse of discretion.")).  Plaintiff concedes that the Fifth Circuit has adopted this standard, but she argues that the court should follow the contrary lead of other circuits.  Dkt. 112 at 2–4 (citing cases).  This court declines to do so, and for that matter may not depart from controlling circuit precedent absent narrow circumstances not present here.  Plaintiff's objection regarding the standard of review is **OVERRULED**.

Plaintiff next objects to Judge Johnson's recommendation that the court grant summary judgment as to LINA's finding that Robert's death was caused by his driving while intoxicated.  Dkt. 112 at 7–8.  Reviewing Judge Johnson's recommendation and the issue *de novo*, this court agrees that LINA's factual determination regarding the cause of Robert's death is entitled to an appropriate amount of deference and should not be disturbed.  The record presented to LINA, namely the certificate of death, police crash report, and medical examiner's report, provides substantial evidence to support LINA's conclusion that his death resulted from his driving while severely intoxicated. The medical examiner found that Robert's BAC was 0.19 percent, more than two times above

9

Virginia's legal limit (0.08 percent). Dkt. 72, Ex. A at 40. The police crash report stated that Robert's vehicle "ran off road right, over corrected, ran off road left, over corrected, ran off road right, and hit tree." *Id.* at 62. That report also indicated that at the time of the crash, there were no adverse weather conditions, and Robert's vehicle veered off a dry roadway. *Id.* at 61. In short, LINA's decision was not arbitrary or capricious, even accepting that its evaluation is entitled to slightly less deference due to the evidence of a conflict of interest. Plaintiff's objection to the recommendation regarding LINA's factual determination is therefore **OVERRULED**.

### b.  Legal Determinations

Judge Johnson found that a *de novo* standard of review should apply to LINA's legal determinations, because neither the policy itself nor a separate document, the "Employee Welfare Benefit Plan Appointment of Claim Fiduciary," contains the requisite grant of discretionary authority to afford a deferential standard of review. Dkt. 110 at 10–18. Defendants argue, by contrast, that language in the policy's amendatory rider, when considered in conjunction with the policy's requirement of "proof of loss satisfactory to Us," shows a grant of discretionary authority to the claims administrator. Dkt. 111 at 5–7.

When determining the appropriate standard of review for legal determinations in these circumstances, a district court is guided by the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989). In *Bruch*, the Court explained that Congress's drafting of ERISA in 1974 was influenced by the language and principles of trust law. *Id.* at 110. The Court considered how this background governs standards of review, and it held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for

10

benefits or to construe the terms of the plan." *Id.* at 115; *see also* RESTATEMENT (SECOND) OF TRUSTS § 187 (1959) ("[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion."). If the plan grants discretionary authority to the administrator, the court will only reverse the administrator's judgment upon a showing of an abuse of discretion. *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 290 (5th Cir. 2013).

Discretionary authority cannot be implied from the instrument's language. *Cathey v. Dow Chem. Co. Med. Care Program*, 907 F.2d 554, 559 (5th Cir. 1990). Instead, it must be expressly conferred upon the fiduciary or administrator. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636 (5th Cir. 1992) (citing *Cathey*, 907 F.2d at 558). The language needed for an express grant need not follow any particular format—rather, the plan must be read "as a whole" to determine whether it actually confers discretionary authority. *Id.*

Defendants contend to this court that the following three sentences from plaintiff's policy, when considered as a whole, suffice to confer discretionary authority upon LINA:

Written or authorized electronic proof of loss satisfactory to Us must be given to Us at Our office, within 90 days of the loss for which claim is made.

* * *

The Plan Administrator has appointed [LINA] as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims.

* * *

[LINA] has 45 days from the date it receives a claim for disability benefits, or 90 days from the date it receives a claim for any other benefit, to determine whether or not benefits are payable in accordance with the terms of the Policy.

Dkt. 72, Ex. A at 92, 103.

11

Regarding the latter two sentences from the amendatory rider, the court finds this language to be insufficient to confer *discretionary* authority upon LINA.  In *Cathey*, the Fifth Circuit found that plan language giving the administrator power to render a "*final decision on a claim for benefits under such policy*" merely allocated general authority, not a grant of discretion, to review and decide claims.  *Cathey*, 907 F.2d at 559–60 (emphasis in original).  The language in this case is materially indistinguishable, as the policy gives LINA power to decide claims and appeals without any relevant parameters upon that power. Indeed, these sentences stand in stark contrast with previous cases in which the Fifth Circuit has found an explicit and precise grant of discretionary authority.  *See Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 395 n.7 (5th Cir. 1996) (applying an abuse of discretion standard of review when the administrator "reserves the right to determine eligibility and construe the terms of the Plan"); *Batchelor v. Int'l Bhd. of Elec. Workers Local 861*, 877 F.2d 441, 443 (5th Cir. 1989) (affording deference under a pension plan granting the trustees "full and exclusive authority to determine all questions of coverage and eligibility"); *Lowry v. Bankers Life & Cas. Ret. Plan*, 871 F.2d 522, 524–25 (5th Cir. 1989) (the administrator was vested under the plan with the power "to determine all questions arising" in the administration of the plan, "including the power to determine the rights or eligibility of Employees and Participants and their beneficiaries, and the amounts of their respective interests").

Moreover, the Proof of Loss provision, in which LINA predicates payment of benefits upon "proof of loss satisfactory to Us," is similarly too ambiguous to meet the test for a discretionary grant of authority.  This court recognizes that the circuit courts are split on this issue, with four circuits holding that this language is sufficient for a grant of discretion, and six others finding that it is not. *See* Dkt. 110 at 14.  The Fifth Circuit has not addressed the issue.

12

After surveying the relevant case law, and light of the Fifth Circuit's general rule of clarity, the court joins those circuits holding that the phrase "satisfactory to Us" is insufficient to confer a grant of discretionary authority. *See Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 166–68 (4th Cir. 2013); *Gross v. Sun Life Assur. Co. of Can.*, 734 F.3d 1, 13–16 (1st Cir. 2013); *Viera v. Life Ins. Co. of N.A.*, 642 F.3d 407, 414–17 (3d Cir. 2011); *Feibusch v. Integrated Device Tech. Inc. Emp. Benefit Plan*, 463 F.3d 880, 883–84 (9th Cir. 2006); *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 636–40 (7th Cir. 2005); *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999). It is unclear whether the phrase "proof of loss satisfactory to Us" refers to the *type* or *quantum* of proof required, or whether the language merely restates the delegation of authority to LINA as the initial decisionmaker. *Diaz*, 424 F.3d at 637 ("[E]very plan requires submission of documentary proof, and the administrator is entitled to insist on [one form of proof over another.].");*see also Cosey*, 735 F.3d at 166–67. And while this language could be read as a grant of discretion to the administrator to construe plan terms in making benefits determinations, as four circuits have found, the court believes that the ambiguities in this phrase are too great to hold that "[this] language *expressly* confers [discretionary] authority on the administrator." *Wildbur*, 974 F.2d at 636 (emphasis added). The "satisfactory to Us" phrase, even considered with the other sentences in the amendatory rider, is fraught with ambiguity as to the authority it confers. *Cathey*, 907 F.2d at 559; *see also Diaz*, 424 F.3d at 639–40 (applying *de novo* review in a case like this one in which the instrument's language requires the administrator "to make a judgment within the confines of pre-set standards," as opposed to discretionary review when the plan gives the administrator "the latitude to shape the application, interpretation, and content of the rules in each case"). Accordingly, the

court agrees with Judge Johnson's well-reasoned finding that "the policy language in this case does not confer discretion . . . to determine eligibility for benefits."  Dkt. 110 at 18.

LINA's motion for summary judgment is premised on arguments for dismissal based on a review of its decision for an abuse of discretion. Dkt. 72 at 15–23.  Because this court agrees that the proper standard for reviewing LINA's legal determinations in this case is *de novo*, the defendants' objections to Judge Johnson's standard of review finding and denial in part of their motion for summary judgment are **OVERRULED**.

### 3.     *Conclusion*

The parties' objections to Judge Johnson's recommendations as to the disposition of defendants' motion for summary judgment (Dkt. 72) and the plaintiff's motion to determine the standard of review (Dkt. 61) are **OVERRULED**, and Judge Johnson's recommendations are **ADOPTED**.  Plaintiff's motion to determine the standard of review (Dkt. 61) is **GRANTED IN PART & DENIED IN PART**.  The court reviews LINA's factual determinations for an abuse of discretion and its legal determinations *de novo*.  Defendants' motion for summary judgment (Dkt. 72) is **GRANTED IN PART & DENIED IN PART**.  The motion is granted as to (1) dismissal of plaintiff's claim regarding LINA's purported failure to provide documents; and (2) LINA's factual determination that Robert died as a result of driving while intoxicated.  The motion is denied to the extent it seeks judgment on the issue of LINA's coverage determination.

### IV. CONCLUSION

Judge Johnson's MRO is **AFFIRMED & ADOPTED** in all respects.  Defendants' motion to strike plaintiff's motion for partial summary judgment and summary judgment exhibits (Dkt. 86) is **GRANTED IN PART & DENIED IN PART**, and defendants' amended motion to strike

plaintiffs' designated experts (Dkt. 58) is **GRANTED IN PART & DENIED IN PART**.  Further,

plaintiff's motion to determine the standard of review (Dkt. 61) is **GRANTED** to the extent that it

determines the standard of review for defendants' summary-judgment motion.  Lastly, defendants'

motion for summary judgment (Dkt. 72) is **GRANTED IN PART & DENIED IN PART**.

It is so **ORDERED**.

Signed at Houston, Texas on August 14, 2014.

Gray H. Miller
United States District Judge