IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SANDRA W. JAMES,<br>    *Plaintiff*,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH<br>AMERICA AND GEICO CORPORATION<br>VOLUNTARY GROUP ACCIDENT INSURANCE<br>PLAN,<br>    *Defendants*. | §<br>§<br>§<br>§    CIVIL ACTION H-12-2095<br>§<br>§<br>§<br>§<br>§<br>§ |

**ORDER AFFIRMING & ADOPTING MAGISTRATE JUDGE'S
MEMORANDUM, RECOMMENDATION & ORDER**

Pending before the court is the Magistrate Judge's Memorandum, Recommendation, and Order (the "MRO") (Dkt. 145) recommending that defendants' motion for summary judgment (Dkt. 126) be denied; plaintiff's motion for summary judgment (Dkt. 128, amending Dkt. 127) be granted; and defendants' motion to strike (Dkt. 135) be granted in part and denied in part. The defendants filed objections to the MRO (Dkt. 146), as did the plaintiff (Dkt. 148). Having reviewed the MRO, the objections to the MRO and responses, and the applicable law, the court **OVERRULES** the parties' objections, **AFFIRMS** the Magistrate Judge's orders, and **ADOPTS** the Magistrate Judge's recommendations in all respects.

**I. BACKGROUND**

This case arises out of the tragic death of plaintiff Sandra James's ("plaintiff") husband, Robert L. James ("Robert"). Dkt. 1 (complaint) at 2 ¶ 7. On May 21, 2010, Robert died in a single vehicle accident in Caroline County, Virginia, after his car collided with a tree and caught fire. *Id.* The medical examiner stated that Robert's cause of death was "inhalation of combustion products

and thermal injury." *Id.* at 2 ¶ 8. The medical examiner listed the manner of death as an "accident." *Id.* A toxicology report revealed that Robert had a blood alcohol level of 0.19%. *Id.* at 3 ¶ 8.

At the time of Robert's death, plaintiff was a GEICO Corporation ("GEICO") employee and a member of its Accidental Death & Dismemberment ("AD&D") insurance program within the GEICO Consolidated Welfare Benefit Plan (the "plan"). *Id.* at 3 ¶ 9. Plaintiff's insurance covered accidental deaths of herself and/or members of her family, including her spouse. *Id.* The coverage amount at the time of Robert's death was $300,000. *Id.* The insurance was provided by defendant Life Insurance Company of North America ("LINA") under Group Accident Policy OK 826414 (the "policy"). *Id.* at 3 ¶ 10. LINA was designated as the claims administrator for the plan. *Id.*

The policy's AD&D benefits were triggered when "the Covered Person suffer[ed] a Covered Loss resulting directly and independently of all other causes from a Covered Accident . . . ." Dkt. 72, Ex. A at 97. A "Covered Accident" was defined as a "sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or a Covered Loss" that is "not contributed to by disease, Sickness [sic], or mental illness," and "is not otherwise excluded" by the policy. *Id.* at 85.

About a month after Robert's death, on June 16, 2010, plaintiff filed a benefits claim with LINA, seeking the policy's accidental death benefit. *Id.* at 55–56. LINA denied plaintiff's claim on August 4, 2010. *Id.* at 25–28. LINA found that the crash was not "unforeseen" as required by the policy, because it was caused by Robert's driving under the influence with a blood alcohol concentration ("BAC") of 0.19%, a level more than two times above the legal limit (0.08%) in the Commonwealth of Virginia. *Id.* at 26. LINA reasoned that because studies have shown that individuals with BACs between 0.11 and 0.20 percent suffer serious physical impairments including

2

slowed reaction time and gross motor control, Robert's death was not an unforeseen event while he operated a motor vehicle with a BAC at the high end of that range. *Id.*

On August 27, 2010, plaintiff appealed LINA's decision. *Id.* at 21. LINA denied plaintiff's appeal on September 22, 2010. *Id.* at 16–18. LINA reiterated that "we have determined that Mr. James' death was the foreseeable outcome of his intentional conduct and thus not accidental in nature." *Id.* at 18. Plaintiff then filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover the GEICO AD&D benefits to which she claims to be entitled. Dkt. 1. She contended that LINA's denial of her claim was based on an incorrect factual determination and an erroneous interpretation of the policy. *Id.* at 7. She further alleged that she was owed statutory penalties of up to 100 dollars per day for LINA's alleged failure to supply a complete copy of her claim file, and that she was entitled to surcharge damages for LINA's alleged breach of fiduciary duty by denying plan benefits to derive unjust profits. *Id.* at 12–13.

On November 1, 2013, this court adopted the MRO before it recommending dismissal of plaintiff's claims for breach of fiduciary duty. Dkt. 77. On August 14, 2014, in an order adopting a second MRO pending before it the court: 1) decided the court would review LINA's factual determinations for an abuse of discretion and its legal determinations *de novo*; and 2) dismissed plaintiff's claim regarding LINA's purported failure to provide documents; 3) made the factual determination that Robert died as a result of driving while intoxicated; and 4) declined to decide the issue of LINA's coverage determination. Dkt. 116. On November 12, 2014, the court denied a motion for reconsideration of its order adopting the MRO from August 14, 2014. Dkt. 142. On May

11, 2015, the Magistrate Judge issued the MRO that is now before the court. Dkt. 142. Both parties filed objections to the Magistrate Judge's MRO. Dkts. 145, 146, 148.

## II. Legal Standard

After referring a case for full pretrial management to a magistrate judge, the court must review *de novo* any of the magistrate's recommendations on dispositive matters to which the parties have properly objected. *See* Fed. R. Civ. P. 72(b)(3). The court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* Moreover, when the magistrate issues an order deciding a nondispositive matter, the district court may overrule or modify the magistrate's orders only to the extent they are "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

The MRO addressed the parties' cross motions for summary judgment on the interpretation of the policy, as well as each party's objections to the evidence submitted by the opposing party. Both parties object to some of the MRO's recommendations on evidentiary issues, and defendants object to the recommendation that plaintiff's motion for summary judgment be granted, and defendants' motion be denied. The court will first consider the objections to the evidentiary recommendations, and will follow with the summary judgment recommendation.

## III. Evidentiary Objections

In an ERISA benefits claim under § 1132(a)(1)(B), a plaintiff is generally limited to presenting evidence from the administrative record on the issue of coverage, unless the evidence relates to how the administrator interpreted the plan in the past or would assist the court in understanding medical terms and procedures. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011). Moreover, evidence outside the administrative record may be offered for

4

certain discrete purposes beyond coverage, namely to determine "[1] the completeness of the administrative record; [2] whether the plan administrator complied with ERISA's procedural regulations; and [3] the existence and extent of a conflict of interest created by an administrator's dual role in making benefits determinations and funding the plan." *Id.* at 5.

### A. Defendants' evidentiary objections

In response to the Magistrate Judge's recommendations regarding evidence she would consider in the motion for summary judgment, defendants raised three objections. First, defendants object to the recommendation to not strike three internal LINA documents. Dkts. 128-8, 128-9, 128-10. Defendants object that 1) the documents were not in effect when plaintiff's claim was decided and were not considered by LINA in connection with plaintiff's claim for benefits; 2) the documents do not reflect LINA's conduct with respect to GEICO; or its conduct with respect to Robert and Mrs. James; or GEICO's understanding of the contract; and 3) the documents do not reflect how LINA previously interpreted the law applicable to plaintiff's claim. Dkt. 146 at 2.

The Magistrate Judge previously found that two of the three internal documents were relevant to LINA's prior interpretation of plan terms, and this court adopted that recommendation Dkt. 116 at 6. The Magistrate Judge determined that the third exhibit that she had not previously ruled upon also indicated LINA's previous interpretation and application of the foreseeability concept in similar situations. This court's prior reasoning holds true to admit all three exhibits: "the conduct of the parties before the advent of a controversy may be relied upon to discover the parties' understanding of the contract." *Schultz v. Metro Life Ins. Co.*, 872 F.2d 676, 679 (5th Cir. 1989). And, as the Magistrate Judge pointed out, LINA does not deny that the exhibits are LINA documents, nor does LINA deny that they are indications of how LINA has interpreted similar policy provisions in the

past. Dkt. 145. Though defendants argue that these documents are based on different law than that applicable in this case, it provides no further explanation, making it a conclusory argument. The Magistrate Judge's order is not clearly erroneous. Defendants' objections regarding the three internal LINA documents (Dkts. 128-8; 128-9; 128-30) are **OVERRULED**.

Defendants also object to the Magistrate Judge striking a Blood Alcohol Content chart that Ms. Sciulli, the accident specialist who initially reviewed the claim, used as a resource. Dkts. 145 at 15; 138-1. Defendants claim that because there is no dispute that Ms. Sciulli actually used the BAC chart to determine plaintiff's claim, it does not matter where she obtained the document. Dkt. 146 at 3. Defendants further contend that Ms. Sciulli is well-qualified to offer opinions based on the BAC chart and objects to the section of the MRO that suggests Ms. Sciulli is not qualified as an expert in the area.

Ms. Sciulli's qualifications to offer expert opinions in any capacity is not at issue here. The Magistrate Judge simply sustained plaintiff's objection to the chart and did not rely on the chart in her review of the parties' motions for summary judgment. Dkt. 145 at 15. The Magistrate Judge sustained the objection to the chart on the basis that the chart was not in the administrative record and did not fit within one of the categories of admissible evidence. *Id.* at 14. Further, Ms. Sciulli could not authenticate the chart or explain who created the chart. *Id.* at 15. "A plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011). LINA had the opportunity to provide evidence that it used to determine coverage, and defendants do not dispute that this chart was not included in the administrative record. The Magistrate Judge's order is not

clearly erroneous as to the BAC chart. Defendants' objections regarding the BAC Chart are **OVERRULED**.

### B. Plaintiff's evidentiary objections

The Magistrate Judge excluded five of plaintiff's exhibits, the same exhibits she had excluded in a prior MRO, which this court adopted. Dkt. 145 at 12 (pending MRO); Dkt. 110 at 20–21 (prior MRO); Dkt. 116 at 5–6 (adoption of prior MRO's ruling on the same evidence). Plaintiff objects to the current exclusion of Exhibits D through H (Dkts. 128-3–128-7), arguing that these show, in part, how LINA interprets the terms of its AD&D policy and LINA's interpretation of foreseeability in other instances. The Magistrate Judge declined to reconsider her prior decision to strike the exhibits because plaintiff did not provide the court with any reason to do so. Dkt. 145 at 12. This court agrees that the exhibits should be excluded. Dkt. 116 at 6. As this court concluded before: the fact that LINA has included express intoxication exclusions in other policies is irrelevant to how it construed the foreseeability test itself in other benefits determinations. The documents merely show that LINA could draft additional contract terms for different policies. The Magistrate Judge's order is not clearly erroneous. Plaintiff's objections to the court striking Exhibits D through H (Dkts. 128-3–128-7) are **OVERRULED**.

## IV. MSJ Objections

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The issue before the Magistrate Judge, and now under review with this court, is the interpretation and

application of the policy, particularly how it relates to the meaning of "unforeseeable" as used in the policy's definition of "accident." Dkt. 145 at 18.

In construing ERISA policy terms, the court looks at the "plain meaning of the plan language." *Tucker v. Shreveport Transit Mgmt. Inc.*, 226 F.3d 394, 398 (5th Cir.2000). The court interprets "plan terms in accordance with their ordinary and popular sense as would a person of average intelligence and experience." *Id.* (internal quotations omitted). In other words, the terms are construed as they would be by "the average plan participant, consistent with the statutory language." *Id.* at 398.

### A. Magistrate Judge's Analysis

The Magistrate Judge concluded that LINA's interpretation of the policy was not reasonable. Dkt. 145 at 39. In coming to that conclusion, she reviewed four Fifth Circuit decisions that interpreted AD&D policies, many of which had similar elements to the case at issue, and many of which also analyzed other prior and relevant Fifth Circuit cases. *Id.* at 19–33. As no cases were directly on point, the Magistrate Judge utilized the rules and reasoning of each case to create a set of applicable rules for the case at hand. *Id.* at 33. Then, she isolated the relevant question: whether Robert could have reasonably anticipated that he would be seriously injured or die as a result of driving while intoxicated. *Id.* at 35. The Magistrate Judge concluded that, contrary to the conclusion of the LINA policy specialist, a reasonable person would not necessarily anticipate, must less find highly likely, serious injury or death from driving with a BAC percentage higher than the state's legal limit. *Id.* at 36. The Magistrate Judge reasoned that the conclusion was consistent with Fifth Circuit case law. For example, the Magistrate Judge explained, a denial must be based on more than a BAC percentage, even if the definition of "accident" included a foreseeability component, and the

interpretation of the policy improperly used a *per se* rule: if Robert was legally intoxicated, this created "foreseeable" serious injury or death and was not an accident. *Id.* at 37–38.

### B. Defendants' objections

Defendants object that the MRO 1) makes an improper extrapolation from the *Firman* case; 2) improperly concludes that LINA applied a *per se* rule; and 3) improperly concludes that LINA's interpretation of the policy was not reasonable.

*1. Objection to use of Firman case*

As to the *Firman* case, defendants argue that the court should not use the *Firman* case's review of the policy's seatbelt benefit as it relates to a loss being found to be unforeseeable, and the court also should not construe *Firman* to conclude that the administrator must rely on more facts than the decedent's BAC percentage to incorporate a foreseeability component. Dkt. 146 at 4. Defendants assert that extrapolation is improper because the policy at issue in *Firman* is worded significantly differently from the policy in this case, including that it did not include a definition for the term accident, much less a definition that included the element of unforeseeability. In contrast, defendants explain, the policy in this case defines "covered accident," in part, as an unforeseeable external event.

LINA's denial letter focuses almost exclusively on the fact that Robert was driving with a BAC over the legal limit, which meant he would suffer various physical impairments; that this behavior was criminal; and therefore, that it was reasonably foreseeable that Robert's death could result from this activity. Dkt. 126-1 at 20. The only evidence it points to in this regard is Robert's BAC after the accident. *Id.* Relying on the BAC alone, is not enough to show that an accident was foreseeable. *Firman*, 684 F.3d at 544. This is not an improper extrapolation from *Firman*, as

9

defendants assert. Even though *Firman* can be distinguished in various respects from the case at hand, and even if not binding, it is very persuasive in light of the facts of this case and other Fifth Circuit cases. *See, e.g., Davis v. Life Ins. Co. of N.A.*, 379 F. App'x 393, 396 (5th Cir. 2012) (unpublished); *Sanchez v. Life Ins. Co. of N.A.*, 393 F. App'x 229, 233 (5th Cir. 2010) (unpublished). Accordingly, defendants' objection to the MRO's extrapolation of the *Firman* case is **OVERRULED**.

Buried within defendants' objection that the Magistrate Judge improperly extrapolated the *Firman* case is an argument that the insured did not show that her loss was covered, and therefore is not entitled to coverage. Dkt. 146 at 5. However, defendants do not submit a controlling case on this issue; the Fifth Circuit very recently declined to decide this issue on the burden of proof; and it is not the relevant question before this court. *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 353 (5th Cir. 2015). The proper question is whether the record supports the administrator's decision, and whether the administrator's justifications for denying the claim at the time it was denied were adequate. *Id.* Defendants do not point to where in the record they raised this argument, and therefore the court will not consider it.[1] To the extent this was meant as an independent objection, it is **OVERRULED**.

*2. Objection to conclusion that a per se rule was used*

As to the Magistrate Judge's finding that a *per se* rule was used in LINA's determination, defendants object that because it considered not just that Robert's BAC level was over the legal

---

[1] Pointing to a letter from plaintiff's attorney asserting that plaintiff has no burden to submit proof that Robert was not operating a vehicle under the influence of alcohol at the time of the crash does not show that LINA denied coverage *because* plaintiff did not submit this information. Dkt. 126-1 at 23. Even if it was plaintiff's burden to prove that Robert was covered, which the court need not consider, plaintiff's letter does not show that a lack of proof was the reason for the denial or that the argument was raised before in this case.

limit, but that it was in one of several different ranges above the legal limit, that shows LINA did not use a *per se* rule. Dkt. 146 at 7. Defendants also claim that Ms. Sciulli considered other factors such as roadway conditions and the weather. *Id.* Further, defendants explain, it is clear there was no *per se* rule in place because Ms. Sciulli testified that she had personally found benefits to be payable on occasions where the deceased driver's BAC was above the legal limit. *Id.*

The conclusion that a *per se* rule was used is supported by record's focus on Robert's BAC. Though LINA claims that Ms. Sciulli considered factors such as roadway conditions and the weather in addition to Robert's BAC level, and the denial letter did state that the police report said the roadway was dry and the weather was clear, nowhere can the court find where these factors actually factored into LINA's decision. Dkt. 126-1 at 20 (denial letter focusing nearly exclusively on the BAC level over the legal limit, and not how clear weather or road conditions played into the determination); Dkt. 126-1 at 25 (explaining that "proof that [Robert] was not under the influence at the time of the crash" was required to succeed on appeal, *not* anything related to roadway or weather conditions). Simply stating information from the various reports does not show that the information was used by LINA to make its determination. In further support, LINA's message to Ms. James explained that on appeal she would need proof that her husband was not intoxicated at the time of the accident. If the decision had been made on multiple bases, proof that those other bases were untrue also logically should have been required or at least helped.

LINA's use of various "ranges" of intoxication in its denial letter also is not persuasive. Stating various physical impairments that are commonly associated with Robert's BAC level, does not show that LINA relied on more than the BAC level to support its finding. In its denial letter, LINA representatives are very clear about how they used the BAC measure to deny coverage. It

appears to be the sole basis of the conclusion that the accident was foreseeable, which is improper. *See Firman*, 684 F.3d at 543 (comparing a case where only BAC was improperly used to a case where the BAC *and* a toxicologists' findings were properly used, and another case where BAC *and* eyewitness accounts and a forensic consultant's opinion and research were properly used) (citing *Davis*, 379 F. App'x at 396; *Sanchez*, 393 F. App'x at 233).

Finally, the fact that Ms. Sciulli can point to different cases where she granted coverage even though the person had a BAC over the legal limit does not say anything about whether she applied a *per se* rule in this case. The court agrees that it appears that LINA applied a *per se* rule to deny Robert's coverage simply because his BAC was over the legal limit, which is improper. *See Firman*, 684 F.3d at 544. Accordingly, defendants' objection to the conclusion that a *per se* rule was used is **OVERRULED**.

*3. Objection to MSJ recommendation*

Finally, defendants object to the ultimate decision in the case and urge that if the evidence is properly considered and the correct burden of proof is applied, LINA's interpretation is reasonably supported and consistent with the plain meaning of the terms used in the policy. *Id.* at 9.

Though the court conducted a *de novo* review, it reaches the same conclusion as the Magistrate Judge and agrees with much, if not all, of her reasoning. The policy applies to "covered accidents," which are: "A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss . . . ." Dkt. 126-1 at 18. It is undisputed that none of the exclusions included in the rest of the definition applies. And, "unforeseeable" is not further defined. *See* Dkt. 126-1 at 87–89 (definitions that apply to policy). However, the court agrees with the Magistrate Judge that the term must incorporate reasonableness,

such that it must determine if Robert could *reasonably* foresee that driving with a BAC over the legal limit would lead to serious injury or death. If he could not reasonably forsee such injury or death from driving with a BAC level over the legal limit, then the accident was unforeseeable, and therefore should be covered. This conclusion is supported by the standard policy interpretation guidelines that require interpretation that a person of average intelligence and experience would understand . *See Tucker*, 226 F.3d at 394, 398 (5th Cir.2000). In that light, "unforeseeable" cannot mean that anything one could possibly foresee, however remote, would not be covered. And, the online Merriam-Webster definition of the word foreseeable is consistent with this conclusion: "being such as may be *reasonably* anticipated." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/foreseeable (last visited June 30, 2015) (emphasis added).

      Though LINA concluded that "serious injury or death would be highly likely to occur while operating a vehicle with a BAC of .19% and would not be an unforeseen event," the reasoning of the denial simply listed common side effects of having a BAC of .19 and, based on these side effects, concluded that Robert's death was highly likely. Dkt. 128-1 at 11. Based on the conclusion that the injury was highly likely, LINA concluded that the accident was foreseeable. The court, like the Magistrate Judge, is not persuaded by this reasoning, particularly when considering whether it is *reasonably* foreseeable that such injury or death would be *highly* likely. More persuasive is a Sixth Circuit opinion that the Magistrate Judge also relied upon, which reviews 2003 National Highway Traffic Administration statistics that compared the amount of alcohol impaired trips that were taken to the amount of people who died (0.17 percent). *Kovach v. Zurich Am. Ins. Co*, 587 F.3d 323, 334 (6th Cir. 2009) (quoting *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 629 (6th Cir. 2007)). It

cannot be reasonably said that a less than one percent chance of death makes death reasonably foreseeable, much less highly likely. Certainly, there are points under which this analysis might differ from the case at hand but it supports the conclusion. This reasoning is not meant to dismiss the tragic consequences that drunk driving can create or the diminish the responsibility drivers must take for their actions, it simply points out that Ms. Sciulli's conclusion does not comport with how an average person would interpret the policy. Id.

For all these reasons, the court **OVERRULES** defendants' objections to the MRO's conclusions on the cross motions for summary judgment. Therefore, defendants' summary judgment motion is **DENIED** and plaintiff's motion for summary judgment is **GRANTED**.

### IV. CONCLUSION

The Magistrate Judge's MRO is **AFFIRMED & ADOPTED** in all respects. Defendants' motion for summary judgment (Dkt. 126) is **DENIED**; plaintiff's motion for summary judgment (Dkt. 128, amending Dkt. 127) is **GRANTED**; and defendants' motion to strike (Dkt. 135) is **GRANTED IN PART & DENIED IN PART**.

It is so **ORDERED**.

Signed at Houston, Texas on July 8, 2015.

_____
Gray H. Miller
United States District Judge